UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE OHIO CASUALTY INSURANCE
COMPANY,

             Plaintiff,

v.                           Case No. 8:10-cv-2602-T-33TBM

GARDEN OF EAT'N OF TAMPA, INC.,
and SHERRI GAFFORD,

             Defendants.
_____/

## ORDER

This matter comes before the Court pursuant to The Ohio Casualty Insurance Company's Motion for Partial Summary Judgment on Sherri Gafford's Affirmative Defense of Estoppel and Motion to Strike Affirmative Defense or for More Definite Statement (Doc. # 21), filed on February 9, 2011, and Sherri Gafford's Response in Opposition (Doc. # 29), which was filed on March 15, 2011.  Also before the Court is Ohio Casualty's Motion for Summary Judgment (Doc. # 22), filed on February 9, 2011, and Gafford's combined Response and Cross Motion for Summary Judgment (Doc. # 28), which was filed on March 10, 2011.  Ohio Casualty filed a Response in Opposition to Gafford's Motion for Summary Judgment on March 24, 2011, and Gafford filed a Reply (Doc. # 36) on April 21, 2011.

For the reasons that follow, the Court grants summary judgment in favor of Ohio Casualty and denies Gafford's motion

for summary judgment.

## I. Background

### A.   The Policy and Gafford's Injury

Ohio Casualty issued a Commercial General Liability Policy to the Garden of Eat'n of Tampa, Inc. on May 26, 2007, with liability limits of $1,000,000.00 per occurrence.  The Policy provides third-party liability coverage to the Garden but also contains several exclusions, which follow:

> **2.   Exclusions**
> This insurance does not apply to:
> **d.   Workers' Compensation And Similar Laws**
> Any obligation of the insured under workers' compensation, disability benefits or unemployment compensation law or any similar law.
> **e.   Employer's Liability**
> "Bodily injury" to:
> (1)   An "employee" of the insured arising out of and in the course of:
> (a)   Employment by the insured; or
> (b)   Performing duties related to the conduct of the insured's business; ...
> This exclusion applies:
> (1)   Whether the insured may be liable as an employer or in any other capacity;

(Doc. # 15 at 5).[1]

On April 24, 2008, while the Policy was still in effect,

---

[1] Ohio Casualty attached a complete copy of the Policy to the amended complaint. (Doc. # 15-1).

2

Gafford, an employee of the Garden, was injured on the premises of the Garden.  On that date, Gafford came in to work at or around 1:00 p.m. and performed her usual duties, including cashier work, stocking the store with fresh produce, watering plants, and pruning plants. (Gafford Dep. Doc. # 22-3 at 17).  The Garden is open seven days a week and closes at 7:00 p.m. Id. at 19-20.  Gafford assisted Manger Pat Touchton with closing the store at or around 7:00 p.m.  Id. at 19. Around this time, Gafford picked up two items (a gallon of milk and an onion) but did not pay for them in the same manner as a usual Garden customer would.  Rather, she wrote down that she retrieved the two items and understood that the amount for the items would be taken from her next paycheck. (Gafford Aff. Doc. # 28-3 at ¶ 5).

Thereafter, Gafford and Touchston walked out of the store together and engaged in a social conversation for approximately ten to fifteen minutes.  (Touchston Dep. Doc. # 28-4 at 11).  Gafford testified that the nature of the conversation was "good night, have a good evening, see you tomorrow." (Gafford Dep. Doc. # 22-3 at 38).  After the conversation was over, around 7:15 to 7:30 p.m., Gafford began walking to her car.  Although it was still light outside, Gafford did not see uneven pavement and a hole in the parking

3

lot. (Touchston Dep. Doc. # 28-4 at 10).  Gafford tripped and fell on to the ground.   Gafford stood up, brushed herself off, and stated that she would be fine. Id. at 19.   No ambulance was called to the scene. Id. at 21.

A few days later, Gafford reported to work but noted that she could not lift one of her arms due to the injuries she sustained on the night in question.  Id. At the direction of her supervisor, Gafford went to the emergency room. Id. at 22. She continued to try to do her job but ultimately gave up because she could not perform due to her injuries. Id. at 34. She underwent neck surgery on or about March 5, 2008, and submitted a claim to Ohio Casualty.  Gafford contends,

> Because I did not have health insurance coverage, I was told to contact Garden of Eat'n's insurance company about medical treatments.  I spoke with a person from Garden of Eat'n's insurance company and advised them that I was injured after working at Garden of Eat'n.  The person I spoke with told me that I was eligible for benefits under the Garden of Eat'n insurance policy.  I received medical treatments which were paid by Garden of Eat'n's insurance company.

(Gafford Aff. Doc. # 28-3 at ¶¶ 10-13).

**B.   Insurance Correspondence**

On June 12, 2008, Ohio Casualty informed Gafford that "There was no negligence on the part of Garden of Eat'n. Therefore, we will be unable to honor any claim under

liability." (Doc. # 28-7).   In the same letter, Ohio Casualty indicated, "Our insured's policy does provide a no-fault, Medical Payment Benefit to assist with any medical expenses incurred (i.e. necessary medical, hospital, surgical, x-ray) submitted to us for review up to a $10,000 limit." Id.

On June 27, 2008, the Gafford sent Ohio Casualty a letter pursuant to Florida Statute Section 627.4137 asking for a disclosure regarding whether coverage would be available under the Policy for her injuries, and if an exclusion applies, naming such exclusion. (Doc. # 28-6).[2]   Ohio Casualty

---

[2] Florida Statute Section 627.4137 states:

(1)   Each insurer which does or may provide liability insurance coverage to pay all or a portion of any claim which might be made shall provide, within thirty days of the written request of the claimant, a statement, under oath, of a corporate officer or the insurer's claims manager or superintendent setting forth the following information with regard to each known policy of insurance, including excess or umbrella insurance:

    (a)   The name of the insurer.
    (b)   The name of each insured.
    (c)   The limits of the liability coverage.
    (d)   A statement of any policy or coverage defense which such insurer reasonably believes is available to such insurer at the time of filing such statement.
    (e)   A copy of the policy.

In addition, the insured, or her or his

5

responded on January 28, 2009, that no coverage would be available: "[I]t appears your client's, Ms. Sherri Gafford, injuries arose out of her own contributory negligence while working as an employee at our named insured's  Garden of Eat'n, location in Tampa, Florida." (Doc. # 28-5 at 2).

## C.  **The Court Proceedings**

Gafford filed a negligence action against the Garden in State Court on February 26, 2009.[3]  Therein, she alleged that she was "an invitee" who suffered "serious and permanent bodily injury" on April 24, 2008, after tripping and falling

---

insurance agent, upon written request of the claimant or the claimant's attorney, shall disclose the name and coverage of each known insurer to the claimant and shall forward such request for information as required by this subsection to all affected insurers.  The insurer shall then supply the information required in this subsection to the claimant within 30 days of receipt of such request.

(2) The statement required by subsection (1) shall be amended immediately upon discovery of facts calling for an amendment to such statement.

Florida Statute Section 627.4137.

[3] Ohio Casualty represents that it is currently defending the Garden against Gafford's State court case under a reservation of rights to withdraw the defense and deny coverage. (Doc. # 22 at 3, n. 1).  Gafford notes in her Reply Memorandum that Ohio Casualty has not filed a copy of the reservation of rights letter.  (Doc. # 36 at 5).  However, Gafford does not appear to actually challenge Ohio Casualty's representation that such letter was submitted to the Garden.

due to the presence of a pothole and uneven pavement in the parking lot.  (Doc. # 15-2, ¶¶ 4-10).

Thereafter, on November 22, 2010, Ohio Casualty filed the instant action for declaratory relief against the Garden and Gafford. (Doc. # 1).  After fruitless default proceedings, Ohio Casualty filed a one-count amended complaint on January 3, 2011, seeking a declaration that the Policy does not require Ohio Casualty to defend or indemnify the Garden from Gafford's State court negligence action. (Doc. # 15).

Gafford filed her answer and affirmative defenses on January 25, 2011. (Doc. # 17).  Gafford asserts estoppel and waiver affirmative defenses. (Doc. # 17).  This case is set for a jury trial during the Court's February 2012, trial term. Cross Motions for Summary Judgment are before the Court.

## II. **Legal Standard**

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742

(11th Cir. 1996) (citing <u>Hairston v. Gainesville Sun Publ'g</u>
<u>Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993)).  A fact is material if
it may affect the outcome of the suit under the governing law.
<u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir.
1997).

The Court must draw all inferences from the evidence in
the light most favorable to the non-movant and resolve all
reasonable doubts in that party's favor.  <u>See</u> <u>Porter v. Ray</u>,
461 F.3d 1315, 1320 (11th Cir. 2006).  The moving party bears
the initial burden of showing the Court, by reference to
materials on file, that there are no genuine issues of
material fact that should be decided at trial.  <u>See</u> <u>id</u>.  When
a moving party has discharged its burden, the non-moving party
must then go beyond the pleadings, and by its own affidavits,
or by depositions, answers to interrogatories, and admissions
on file, designate specific facts showing there is a genuine
issue for trial.  <u>See</u> <u>id</u>.

In this diversity case, the Court applies the substantive
law of the forum state unless federal constitutional or
statutory law compels a contrary result.  <u>Tech. Coating Apps.,</u>
<u>Inc. v. United States Fid. & Guar. Co.</u>, 157 F.3d 843, 844
(11th Cir. 1998).  Furthermore, this Court must apply Florida
law in the same manner that the Florida Supreme Court would

8

apply it.  Brown v. Nichols, 8 F.3d 770, 773 (11th Cir. 1993).

Under Florida law, the interpretation of an insurance contract

is a matter of law to be decided by the court.  Gas Kwick, Inc.

v. United Pac. Inc. Co., 58 F.3d 1536, 1539 (11th Cir. 1995).

Courts must construe an insurance contract in its entirety,

striving to give every provision meaning and effect.  Id.

(citing Dahl-Eimers v. Mut. of Omaha Life Ins. Co., 986 F.2d

1379, 1382 (11th Cir. 1993)).

III.  **Analysis**

    A.    **The Duty to Defend and the Duty to Indemnify**

The duty to defend is broader than the duty to indemnify.

Sinni v. Scottsdale Ins. Co., 676 F. Supp. 2d 1319, 1323 (M.D.

Fla. 2009).  The decision of whether an insurer has a duty to

defend "is determined solely by the claimant's complaint if

suit has been filed." Higgins v. State Farm Fire and Cas. Co.,

894 So. 2d 5, 9-10 (Fla. 2004).   An insurer's duty to

defendant against a legal action is triggered "when the

complaint alleges facts that fairly and potentially bring the

suit within policy coverage." Jones v. Fla. Ins. Guar. Ass'n,

Ins., 908 So. 2d 435, 442-43 (Fla. 2005).

The insurer must defend even if the complaint allegations

are factually incorrect and without merit.  Smithers Constr.,

Ins. v. Bituminous Cas. Corp., 563 F. Supp. 2d 1345, 1348-49

(S.D. Fla. 2008). "Any doubts regarding the duty to defend must be resolved in favor of the insured." Id. Here, the duty to defend is triggered because Gafford's complaint alleges that she was injured on the premises of the Garden, not as a an employee, but as an invitee.

However, "the duty to defend does not continue indefinitely." Scottsdale Ins. Co. v. GFM Operations, Inc., Case No. 10-cv-20204, 2011 U.S. Dist. LEXIS 39696, at *11-12 (S.D. Fla. Apr. 12, 2011). A insured has the duty to defend a claim until it is "certain" that the claim is not covered by the policy at issue. Nationwide Mut. Fire Ins. Co. v. Keen, 658 So. 2d 1101, 1103 (Fla. 4th DCA 1995). That is, "the duty to defend ceases when it is shown that there is no potential for coverage i.e., when there is no duty to indemnify." Underwriters at Lloyds London v. STD Enters., 395 F. Supp. 2d 1142, 1146-47 (M.D. Fla. 2005). Because "the covenant of coverage informs the duty to defend," whether Ohio Casualty has a continuing duty to defend the Garden in State Court will depend on whether Ohio Casualty has a duty to indemnify the Garden against the loss for Gafford's claimed injuries. Keen, 658 So. 2d at 1103.

In contrast to the duty to defend, the duty to indemnify is not determined by reference to the claimant's complaint,

but rather by reference to the actual facts and circumstances of the injury.  <u>STD Enters.</u>, 395 F. Supp. 2d at 1147.  In this context, "insurance contracts are to be construed in a manner that is reasonable, practical, sensible, and just. . . . Terms used in a policy are given their plain and ordinary meaning and read in the light of the skill and experience of ordinary people.  Provisions that exclude or limit liability of an insurer are construed more strictly than provisions that provide coverage." <u>United States Fire Ins. Co. v. Freedom Vill. of Sun City Ctr.</u>, 279 F. App'x 879, 880-881 (11th Cir. 2008)(internal citations omitted).  Furthermore, if provisions in an insurance contract are "reasonably susceptible of more than one meaning, they are ambiguous and construed in favor of the insured.  That rule applies if a genuine inconsistency, uncertainty, or ambiguity in meaning remains after a review of the plain language." <u>Id.</u> at 881.

### B.   <u>Florida Workers' Compensation Statute</u>

Under Florida Statute Section 440.11:

> The liability of an employer prescribed in s. 440.10 shall be *exclusive* and in place of all other liability, including vicarious liability, or such employer to a third-party tortfeasor and to the employee, the legal representative thereof, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recovery damages from such employer at law or in admiralty on account of such injury or death . . .

11

(emphasis added).

"[T]he fundamental proposition embodied in Section 440.11 [is] that where an injury is suffered in the course and scope of employment, workers' compensation is the exclusive remedy for recovery against the employer." <u>Chiang v. Wildcat Groves</u>, 703 So. 2d 1083, 1087-88 (Fla. 2nd DCA 1997).  In addition to showing that the injury suffered was in the course and scope of the employment, a workers' compensation claimant must also show that "the employment constituted a major contributing cause of the accident or injury." <u>Perez v. Publix Supermarkets</u>, 673 So. 2d 938, 939-40 (Fla. 3d DCA 1996).  In <u>Perez</u>, an employee slipped and fell after clocking out and during her walk to the parking lot.  She was on the premises of her employer.  The court indicated, "travelling to and from work is essential to the performance of an employee's duties and is reasonably necessary for that purpose." <u>Id.</u> at 940. The court held that the employee was entitled to workers' compensation benefits even though her shift was over.

A long line of Florida cases describe how an employee, though not actively working, is still entitled to workers' compensation benefits if that employee (1) is about to begin work or has just finished their duties; (2) is preparing to begin work or leave for the day; and (3) is injured on the

12

premises of the employer. <u>See</u> <u>City of St. Petersburg   v.</u>
<u>Cashman</u>, 71 So. 2d 733 (Fla. 1954)(an injury is deemed to have
occurred in the course of employment if it is sustained by a
workman, on an employer's premises while preparing to begin a
day's work or while doing other acts which are preparatory or
incidental to performance of his duties, and which are
reasonably necessary for such purpose); <u>Doctor's Business</u>
<u>Serv., Inc. v. Clark</u>, 498 So. 2d 659 (Fla 1st DCA 1986)(the
course of employment, for employees having a fixed time and
place of work, embraces a reasonable interval before and after
working hours while the employee is on the premises engaged in
preparatory or incidental acts); <u>Johns v. State</u>, 485 So. 2d
857 (Fla. 1st DCA 1986)(an employee going to and from work
while on the premises where his work is to be performed and
within a reasonable time before and after working hours is
presumed to be in the course and scope of his employment).

Here, Gafford's shift ended at or around 7:30 p.m., and
her injury happened on the premises of the Garden at or around
7:40 p.m.  Ohio Casualty contends that, under any reasonable
interpretation of Florida workers' compensation law, the Court
must find that Gafford's injury of tripping on the way to her
car after completing her shift falls under the worker's
compensation statute.

Gafford, on the other hand, argues that her actions of (1) buying milk and an onion from the Garden and (2) having a social conversation with Touchston remove her injury from within the parameters of the workers' compensation statute. She argues that her actions of shopping and conversing are a "significant deviation" operating like an "intervening cause" that "broke the scope and course chain of performing actions incidental to employment and in furtherance of the employer's business interest." (Doc. # 28 at 9).

Gafford cites a number of inapposite cases in support of her position. She particularly relies upon Gray v. E. Airlines, Inc., 475 So. 2d 1288 (Fla. 1st DCA 1985), where the court found an off-duty flight attendant was entitled to workers' compensation when he was injured at a YMCA while playing basketball. The Court indicated that activities such as playing sports, taking breaks, and buying food and drinks at a store did not constitute a personal errand (in the case of an employee "whose work entails travel away from the employer's premises), so as to remove the injury from the ambit of the workers' compensation statute. Id. at 1290. In this case, the record does not reflect that Gafford's work required her to leave the premises of the Garden.

Gafford also relies upon Aloff v. Neff-Harmon, Inc., 463

14

So. 2d 291 (Fla. 1st DCA 1985).  This case is also factually inapposite.  There, a cocktail waitress was raped, assaulted, and robbed by five armed assailants at 4:00 a.m.  Id. at 293. Her shifted ended at or around 2:00 a.m. that morning and she was "expected by the owner" to leave the bar by 2:30 a.m. Id. at 292.  It was the normal procedure for all of the cocktail waitresses to leave together, however, the plaintiff, a lone waitress, was asked to stay behind by her manager, who was also her "personal friend." Id.

In that case, the trial court's entry of summary judgment was reversed so that a jury could determine whether her claims should be limited to workers' compensation because there was an issue of fact as to whether she was acting within the scope of her employer at the time of her injury, which occurred over two hours after the end of her shift. Id. at 294.  See also American Legion v. Gailey, 498 So. 2d 1321, 1322 (Fla. 1st DCA 1985)(bartender not entitled to workers' compensation when, two hours after his shift and after consuming two complimentary beers and then consuming two Scotch whisky drinks that he paid for as a normal customer, he was injured in a bar brawl).  In contrast, Gafford suffered her injury between ten to fifteen minutes after the end of her shift.

If the Court were sitting as the trier of fact, it would

likely conclude that Gafford's claim falls under the Policy Exclusion stating: "This insurance does not apply to: Workers' Compensation."   However, Florida case law indicates that the issue of "[w]hether an injured workman is an employee whose injury arise out of and in the scope of his employment is ordinarily a question of fact to be decided by the trier of fact, be that judge, jury, or deputy commissioner." Grady v. Humana, Inc., 449 So. 2d 984, 985 (Fla. 1st DCA 1984); see also Rogers v. Barrett, 46 So. 2d 490 (Fla. 1950).   In addition, Gafford has cast some doubt on whether her injury arose from the scope of her employment because, after working, she shopped and engaged in a social conversation.   With a potential dispute as to this issue, the Court will not reach a finding as to whether her claims are workers' compensation claims.   However, summary judgment in favor of Ohio Casualty is still appropriate under the Employer Liability Policy Exclusion.

### C.   The Employer Liability Policy Exclusion

The Florida Supreme Court has held that in the context of Commercial General Liability Policies, such as the Garden's Policy, the term "arising out of" should be read broadly and requires only "some causal connection, some relationship." Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So. 2d

528, 539-40 (Fla. 2005).

The reasoning underlying this broad interpretation of employer's liability exclusions like the one here is the purpose of the exclusion--the only coverage intended, and the only coverage for which a premium has been paid, is for liability to the public as opposed to liability to the insured's employees. Fla. Ins. Guar. Ass'n v. Revoredo, 698 So. 2d 890, 892 (Fla. 3d DCA 1997). As stated in Sinni v. Scottsdale Ins. Co., 676 F. Supp. 2d 1319, 1333 (M.D. Fla. 2009), "[A]n employer's liability exclusion for bodily injury to an employee 'arising out of and in the course of employment' encompasses claims that are potentially broader than workers' compensation obligation and may only have a limited causal relationship to employment."

In the case of Gafford's injuries, irrespective of whether Gafford's injuries amounted to an obligation under Florida's workers' compensation statute, the Employer Liability Exclusion in the Policy precludes coverage because Gafford's injury has at least a "limited causal relationship to employment." Id. Gafford was injured when she tripped on a pothole and uneven pavement in the parking lot on her employer's premises within fifteen minutes of the completion of her shift. This factual scenario fits squarely within the

17

broad reading of the Employer Liability Policy Exclusion's "arising out of language," especially because that Exclusion only requires that the injury "arise out of performing duties related to the conduct of the insured's business."

Other courts have construed similar exclusions found in Commercial General Liability Policies under the circumstances of injuries sustained after leaving work for the day.  <u>See Scottsdale Ins. Co. v. GFM Operations, Inc.</u>, Case No. 10-cv-20204, 2011 U.S. Dist. LEXIS 39696 (S.D. Fla. Apr. 12, 2011)(finding exclusion in General Commercial Liability Policy precluded coverage for employee who was shot on the employer's premises on the way to his car, but after performing a "personal task"); <u>Sinni</u>, 676 F. Supp. 2d at 1333 (holding exclusion precluded coverage for employee who slipped and fell on pathway to parking lot after finishing work).

The Court determines that Gafford's injuries are likely covered under the Workers' Compensation Policy Exclusion and are certainly covered under the Employer's Liability Policy Exclusion and therefore, the Court grants Ohio Casualty's Motion for Summary Judgment (Doc. # 22).  However, the Court's analysis does not end here.  Also before the Court is Ohio Casualty's Motion for Partial Summary Judgment as to Gafford's Estoppel and Waiver Affirmative Defenses.

18

D.   **Estoppel and Waiver**

Based on common law as well as Florida Statute Section 627.426 (the claims administration statute), and Florida Statute Section 627.4137 (the insurance disclosure statute), Gafford asserts several variations on the affirmative defenses of estoppel and waiver.  (Doc. # 17).

1.   **Promissory Estoppel**

Court may apply the doctrine of "equitable estoppel to insurance contracts . . . to prevent a forfeiture of insurance coverage, but not [to] affirmatively create or extend coverage" where such coverage does not exist. Crown Life Ins. Co. v. McBride, 517 So. 2d 660, 661-62 (Fla. 1987).  On the other hand, the Court may utilize promissory estoppel "to create insurance coverage where to refuse to do so would sanction fraud or other injustice." Id. at 662.

Since the Court determines that the Employer's Liability Policy Exclusion applies, the Court will consider the elements of promissory estoppel, rather than equitable estoppel. "Under the doctrine of promissory estoppel, a party is estopped from denying liability where that party makes a promise which it should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance and injustice

19

can be avoided only by enforcement of the promise." <u>Centimark</u>
<u>Corp. v. Gonzalez</u>, 10 So. 3d 644, 645 (Fla. 1st DCA 2009).

The Florida Supreme Court has characterized promissory
estoppel as a "very narrow exception" to the general rule, and
to create insurance coverage under the doctrine of promissory
estoppel, the elements of promissory estoppel must be proved
by clear and convincing evidence. <u>AIU Ins. Co. v. Block Marina</u>
<u>Inv., Inc.</u>, 544 So. 2d 998, 1000 n.1 (Fla. 1989).

In addition, the doctrine of promissory estoppel may be
asserted by third parties to an insurance contract, such as
Gafford, only under a narrow set of circumstances. For
example, in <u>Masonry v. Miller Constr.</u>, 558 So. 2d 433, 434
(Fla. 1st DCA 1990), Liberty Mutual provided Masonry, a
subcontractor, with workers' compensation coverage. <u>Id.</u> at
434. Liberty Mutual cancelled the policy due to nonpayment of
premiums, but mistakenly sent a renewal policy to Masonry.
<u>Id.</u> Masonry presented the renewal policy to Miller
Construction, a general contractor, as proof of workers'
compensation insurance (even though no such coverage existed).
<u>Id.</u> Thereafter, a Masonry worker was injured on the job. <u>Id.</u>
Miller Construction's workers' compensation carrier paid the
injured worker for his injures and sought and obtained
reimbursement from Liberty Mutual on the ground that Liberty

20

Mutual should be estopped from denying coverage under an erroneously issued policy. Id.  Liberty Mutual appealed and argued that Miller could not argue estoppel because the representation of insurance coverage (albeit erroneous) was made to Masonry.

On appeal, the court held that third parties who detrimentally rely on an insurer's false representations may assert estoppel.  In so holding, the court did not permit Miller to assert estoppel because Miller was prejudiced by Masonry's reliance on the false representation of coverage. Rather, the Court zeroed in on the fact that Miller personally relied to its detriment on Liberty Mutual's erroneous representation of coverage.

Although Gafford has been given ample opportunity, she has failed to submit to the Court evidence of a clear and convincing nature supporting her estoppel arguments.  Although she vaguely claims in her affidavit that she spoke to someone who stated she would be covered, Gafford never identified the nameless person she allegedly spoke to about the Garden's insurance Policy and fails to indicate the date of the call. In addition, Gafford has not supplied the Court with evidence that Ohio Casualty paid any medical bills in excess of $10,000.00 under its no-fault provision (as opposed to the

$1,000,000.00 liability limits).  Thus, she has not identified a representation (either to the Garden or to her) by Ohio Casualty or its agents which Ohio Casualty could reasonably expect to induce action or forbearance and which did induce such action or forbearance.  Accordingly, her common law promissory estoppel argument fails.  The Court will now address whether any failure to comply with Florida insurance statutes sustain Gafford's estoppel and waiver arguments.

### 2.   Florida's Claims Administration Statute §   627.426

Gafford urges the Court to find coverage under the ruling of Florida Municipal Insurance Trust v. Village of Golf, 850 So. 2d 544 (Fla. 4th DCA 2003): an insurer, when the policy excludes coverage, can be estopped from denying coverage if it negligently investigates a claim before suit is filed, and the insured is prejudiced.  The Court determines that the facts of the present case fall outside of the holding above.  There, the court emphasized, "If an insurer erroneously begins to carry out these duties [including defense of a claim] and the insured, as required, relies upon the insurer to the insured's detriment, then the insurer should not be able to deny the coverage to which it earlier acknowledged." 850 So. 2d at 547.

Gafford has not supplied the Court with any evidence of

negligent claims handling on the part of Ohio Casualty and has not supplied the Court with evidence that Ohio Casualty ever "acknowledged" coverage for her claim.  To the contrary, the only documents from Ohio Casualty that are in the Court's file are documents in which Ohio Casualty denies coverage for Gafford's claim.[4]

Importantly, the <u>Florida Municipal</u> case appeared to limit its holding to relief for the insured, as follows: "we clearly state that the insured must demonstrate that the insurer's assumption of the insured's defense has prejudiced the insured.  It is the fact that the insured has been prejudiced which estops the insurer from denying the indemnity obligation of the insurance policy." 850 So. 2d 547.  Here, the insured is the Garden, and although it is named as a Defendant, it is a dissolved corporation, and it has not stated a position in this matter.

Gafford has not presented a plausible theory as to why the holding in <u>Florida Municipal</u> should be extended to a third party. In addition, it should be noted that Florida's claims

---

[4] Ohio Casualty's representation that $10,000.00 may be available under the no-fault bodily injury policy for medical expenses does not constitute an acknowledgment that Gafford's injury claims are covered under the Commercial General Liability Policy in question, with Policy limits of $1,000,000.00.

administration statute, Section 627.426(2), "was not intended to create or resurrect coverage . . . . where there was no coverage in the first place." <u>Block Marina Inv., Inc.</u>, 544 So. 2d at 999-1000.[5]  Further, an insurer's "failure to comply with the requirements of [Florida Statute Section 627.426(2)] will not bar an insurer from disclaiming liability where . . . the coverage sought is expressly excluded or otherwise unavailable under the policy or under existing law." <u>Id.</u> at 1000.

### 3.  <u>Florida's Insurance Disclosure Statute § 627.4137</u>

In a final effort to preclude the entry of summary judgment in favor of Ohio Casualty, Gafford argues that coverage should be created by the Court due to a delay on the part of Ohio Casualty in identifying the specific exclusion, which appears on the face of the Policy, under which it ultimately denied coverage.

In June 2008, Ohio Casualty explained that it was denying coverage (Doc. # 28-7) and in January 2009, Ohio Casualty

---

[5] Florida Statute Section 627.426(2)(a) states, "A liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless: (a) Within 30 days after the liability insurer knew or should have known of the coverage defense, written notice of reservation of rights to assert a coverage defense is given to the named insured . . ."

clarified, in a letter directed to Gafford's counsel, that coverage was denied because Gafford's injuries were sustained while working as an employee of the Garden.  Although it took Ohio Casualty some time to clarify its position as to why coverage was denied, it should be noted that, at no point in time (at least as reflected from this Court's file) did Ohio Casualty represent to Gafford or to the Garden that Gafford's injuries would be covered by the Policy.[6]

Gafford points to two cases unfavorable to insurers which are inapposite. See United Auto Ins. Co. v. Rousseau, 682 So. 2d 1229 (Fla. 4th DCA 1996)(policy defense not available to an insurer that failed to provide a copy of the applicable insurance policy to a claimant); Figueroa v. U.S. Security Ins., 664 So. 2d 1130 (Fla. 3d DCA 1995)(insurer, who admitted coverage, failed to provide a copy of the policy, resulting in reversal of summary judgment that was issued in favor of the insurer).  The Court does not have evidence before it showing that Ohio Casualty failed to tender the Policy upon request or that Ohio Casualty failed to make a specific statutory

---

[6] Gafford's nebulous affidavit statement that she talked to an unidentified representative of Ohio Casualty on an unknown date and that such representative "told me I was eligible for benefits under the . . . policy" is insufficient to support her affirmative defenses. (Doc. # 28-3 at ¶ 12).

disclosure.

Here, the coverage sought was excluded by a valid Policy Exclusion, which is unambiguous and appears on the face of the Policy. Accordingly, and for the reasons stated above, the Court rejects Gafford's wavier and estoppel affirmative defenses.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Ohio Casualty Insurance Company's Motion for Partial Summary Judgment on Sherri Gafford's Affirmative Defense of Estoppel (Doc. # 21) is **GRANTED.**

(2)   Ohio Casualty Insurance Company's Motion for Summary Judgment (Doc. # 22) is **GRANTED.**

(3)   Sherri Gafford's Cross Motion for Summary Judgment (Doc. # 28) is **DENIED.**

(4)   The Clerk is directed to enter Judgment in favor of Ohio Casualty Insurance Company and against Defendants.

(5)   The Clerk is directed to terminate all pending deadlines and to **CLOSE THE CASE.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>2nd</u> day of September, 2011.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:
All Counsel and Parties of Record